**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **PATRICK GRIMISON**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**HATALOM CORPORATION**, a Florida corporation,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No. 6:26-cv-2453** |

**<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

NOW COMES the Plaintiff, PATRICK GRIMISON ("GRIMISON" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

**<u>INTRODUCTION</u>**

1. This is an action brought under the False Claims Act (FCA) and Florida's Private Whistleblower Act (FWA) for (1) retaliation in violation of the FCA, and (2) retaliation in violation of the FWA.

**<u>JURISDICTION AND VENUE</u>**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff is domiciled in, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Brevard County and Orange County, Florida, both of which are within the Middle District of Florida. Venue is proper in the Orlando Division under Local Rule 3.01 since both Brevard and Orange Counties are within the Orlando Division.

**PARTIES**

5. Plaintiff, PATRICK GRIMISON ("GRIMISON" or "Plaintiff"), is an individual who is domiciled in Merritt Island, Brevard County, Florida. Grimison holds an MBA and is a Certified Federal Contracts Manager (CFCM).

6. Defendant HATALOM CORPORATION ("HATALOM" or "Defendant") is a Florida profit corporation with its principal place of business at 12633 Challenger Parkway, Suite 260, Orlando, Florida 32826. Defendant is a Service-Disabled Veteran-Owned Small Business (SDVOSB) defense contractor whose primary revenue source during the relevant period was a large subcontract with SAAB Defense and Security USA supporting the Marine Corps Tactical Combat Training System (MCTIS) program. Defendant

participates in federal procurement as a subcontractor to SAAB and as a holder of prime government contracts, and receives federal funds in exchange for its performance. Defendant employs in excess of 100 employees and is an employer under the FCA and FWA.

## GENERAL ALLEGATIONS

7. The Plaintiff began his employment with the Defendant on or about September 1, 2025, and was employed as Director of Contracts at a salary of $170,000 per year.

8. The Plaintiff performed his assigned duties in a professional manner and was well qualified for his position.

**Defendant's Submission of False Federal Certifications**

**A. Scheme No. 1: False FAR 52.204-10 Certification — February 2026**

9. SAAB Defense and Security USA issued Hatalom a sole-source Request for Proposal (RFP) in February 2026 for a six-month bridge subcontract to continue MCTIS support through December 31, 2026. As Director of Contracts, the Plaintiff was responsible for responding to this RFP. SAAB's standard RFP package included flow-down certifications and representations, including FAR 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards.

10. In reviewing the FAR 52.204-10 form, the Plaintiff determined that Hatalom met the reporting threshold for the first time in calendar year

2025, having (a) received 80% or more of its annual gross revenues from Federal sources, (b) received $25 million or more in annual gross revenues from Federal sources — surpassing that milestone for the first time in calendar year 2025 — and (c) executive compensation information was not already publicly available. The Plaintiff forwarded the form to the proposal folder and notified John Hinnant (CEO) and Stacey Hinnant (CGO) via email and Microsoft Teams that they would need to provide the required executive compensation information for the Plaintiff to complete and certify the form.

11. The Plaintiff immediately received pushback through emails and Microsoft Teams messages, with John Hinnant, Stacey Hinnant, and Jim Wright (COO) on the communications. Stacey Hinnant asserted that the former Director of Contracts had negotiated this requirement away with SAAB and that it had not been required previously. The Plaintiff explained in writing that this was the first time Hatalom had triggered the $25 million revenue threshold and therefore the first time the reporting obligation applied.

12. John Hinnant's stated position was that Hatalom had not yet formally closed out its FY 2025 financials and therefore should report FY 2024 figures, which would fall below the $25 million threshold. The Plaintiff provided detailed written explanation of the FAR 52.204-10 requirement, noting this was a standard obligation routinely met by small businesses at this revenue level, and explained that the certification requirement was not

contingent on formal completion of annual financial statements — the threshold had been met and the obligation applied regardless.

13. Prior to the proposal due date of February 23, 2026, John Hinnant sent an email — either a direct reply to one of the Plaintiff's emails or a reply to Stacey Hinnant's reply — with Stacey Hinnant and Jim Wright copied, stating that Hatalom would not be providing the executive compensation information to SAAB as required.

14. The Plaintiff informed Jim Wright that he would not sign the FAR 52.204-10 form containing a material misrepresentation. The Plaintiff stated that if John Hinnant wished to submit the false certification, he would need to complete and sign it himself. John Hinnant did so — checking the box representing that Hatalom had NOT achieved $25 million or more in annual Federal revenue, a representation he knew to be false — and signed and submitted the form to SAAB as part of the February 2026 proposal package. The Plaintiff did not sign this certification.

**B. Scheme No. 2: False FAR 52.204-10 Certification — May 2026**

15. In mid-May 2026, SAAB issued a second sole-source RFP to Hatalom for the follow-on five-year MCTIS subcontract beginning January 1, 2027. The proposal due date was May 14, 2026. Having experienced the February episode, the Plaintiff did not engage in further discussion with Defendant's leadership regarding the FAR 52.204-10 certification

requirement. The Plaintiff transmitted the form directly to Stacey Hinnant with a notation that John Hinnant should complete and sign the document as he had done in February.

16. John Hinnant again completed the FAR 52.204-10 form, again checking the box representing that Hatalom had NOT achieved $25 million or more in annual Federal revenue. He signed the form and it was submitted to SAAB via email as part of the May 2026 proposal package, along with pricing and other representations and certifications. The Plaintiff did not sign either certification.

17. The false certifications described in Paragraphs 14 and 16 each constitute the knowing submission of false statements, false certifications, and false claims to the federal government in connection with federal subcontract proposals, in violation of the Federal False Claims Act.

**Defendant's Retaliation Against the Plaintiff**

18. Following the Plaintiff's refusal to sign the February 2026 false certification and his written objections to Defendant's illegal conduct, John Hinnant's conduct toward the Plaintiff in meetings became openly hostile. The following retaliatory incidents occurred in the weeks preceding the Plaintiff's termination, in each instance in the presence of multiple colleagues and executives.

19. Following receipt of a Stop Work Order on one of Hatalom's remaining prime contracts, the Plaintiff prepared and distributed an internal company notification outlining the Stop Work requirements and identifying potential next steps including a Termination for Convenience (T4C) and a Request for Equitable Adjustment (REA). During an internal meeting to discuss the Stop Work in approximately on or about May 19, 2026, John Hinnant told the Plaintiff directly — in a disrespectful tone and in front of colleagues — not to say anything about FAR requirements or Termination for Convenience. Defendant thus directed its Director of Contracts to suppress accurate contractual guidance at the precise moment the company was navigating its most significant contractual risk.

20. During an internal meeting approximately on or about May 20, 2026, John Hinnant told the Plaintiff directly — in a disrespectful tone and in front of the assembled group — to "keep my mouth shut" during discussions with the government team. As Director of Contracts, the Plaintiff's participation in those meetings and provision of accurate contractual guidance was a core job responsibility.

21. In approximately April or May 2026, following a dispute over the governing law provision in an NDA the Plaintiff had negotiated with SAAB Sweden, John Hinnant publicly attacked the Plaintiff's professional judgment before the executive team and made a snide remark about the Plaintiff's use of

AI-based research tools. AI tools including Claude and ChatGPT were company-licensed and company-authorized tools actively advocated and used by John and Stacey Hinnant and throughout the organization. The Plaintiff's use of AI to support contractual analysis was fully consistent with company policy.

22. John Hinnant subsequently told Jim Wright, while Wright was attempting to persuade Hinnant to reconsider the Plaintiff's termination: "Patrick likes to use AI to prove me wrong." This statement demonstrates that Hinnant viewed accurate, professionally-supported contractual advice as a personal challenge to his authority rather than expert guidance in Hatalom's interest.

23. On May 28, 2026 — approximately ten days after the submission of the second false FAR 52.204-10 certification and one to one and a half weeks after the Stop Work meeting — Defendant terminated the Plaintiff's employment. The stated reason was: "Due to current business conditions, Hatalom Corporation has made the difficult decision to restructure the workforce."

24. The purported business justification for the Plaintiff's termination is pretextual. The Plaintiff's position — Director of Contracts — was the only position eliminated in the purported reduction in force. No other employees were let go. Approximately three to four direct-charge employees hired

specifically to support the prime contract that had received the Stop Work Order and was heading toward a T4C were retained, despite their program winding down and their salaries being direct-charged against the terminating contract. The Plaintiff's compensation was structured as indirect General and Administrative (G&A) overhead and was not direct-charged to any specific contract. The Plaintiff's termination occurred at the moment experienced senior contracts leadership was most urgently needed to navigate the active T4C and REA process. No discussion of transition planning, knowledge transfer, or any consulting or advisory arrangement occurred — an omission wholly inconsistent with a good-faith business restructuring decision.

25. Neither John Hinnant nor Stacey Hinnant was present or at the office on the day of the Plaintiff's termination. The termination was delivered by Jim Wright (COO) and the Vice President of Human Resources. The Plaintiff received no severance.

26. As a direct and proximate result of his refusal to sign false federal certifications, his written objections to and reports regarding Defendant's violations of law and submission of false claims to the federal government, and his efforts to stop those violations, the Plaintiff suffered a series of adverse employment actions, including public humiliation in meetings, suppression of his professional duties, and ultimately his wrongful termination.

**COUNT I — VIOLATION OF 31 U.S.C. § 3730(h): RETALIATION**

27. Plaintiff incorporates by reference Paragraphs 1–2 and 4–26 of this Complaint as though fully set forth below.

28. The Plaintiff, an employee, believed in good faith — and a reasonable employee in the same or similar circumstances would also believe — that the Defendant was committing fraud upon the federal government by, among other things, submitting FAR 52.204-10 certifications to SAAB that falsely represented that Hatalom had not achieved $25 million or more in annual Federal revenue, when in fact it had, in connection with federal subcontract proposal packages submitted in February and May 2026.

29. The Defendant — through its CEO John Hinnant, CGO Stacey Hinnant, and COO Jim Wright — was aware of the Plaintiff's objections to and refusal to participate in the Defendant's illegal conduct. The Plaintiff communicated his objections and refusals directly to John Hinnant, Stacey Hinnant, and Jim Wright in writing via email and Microsoft Teams, explained in detail why the FAR 52.204-10 reporting obligation applied, and explicitly stated that he would not sign a false certification.

30. Following the Plaintiff's protected activity, the Plaintiff was subjected to a pattern of adverse employment actions, including public humiliation before colleagues, suppression of his core job responsibilities, and

ultimately his termination as the sole casualty of a purported workforce restructuring.

31. Pursuant to 31 U.S.C. § 3730(h) of the False Claims Act, any employee who is discharged, demoted, suspended, threatened, harassed, or otherwise discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done under the FCA is entitled to all relief necessary to make the employee whole.

32. The purpose of the FCA, as explained in the Senate report accompanying the 1986 amendments to the FCA, was to halt companies from using the threat of economic retaliation to silence whistleblowers and to assure those considering exposing fraud that they are legally protected from retaliatory acts. S. Rep. No. 99-345, at 34 (1986), U.S. Code Cong. & Admin. News 1986, at 5266, 5299.

33. The Defendant began its negative employment actions against the Plaintiff and ultimately discharged him from his position for reasons contrary to public policy, as set out in 31 U.S.C. § 3730(h), and without just cause.

34. The Defendant, in discharging, threatening, harassing, and otherwise retaliating against the Plaintiff in and from his employment, discriminated against him because of the protected complaints and objections he raised to the Defendant's leadership.

35. The acts of the Defendant in threatening, publicly humiliating, suppressing the professional duties of, and ultimately wrongfully terminating the Plaintiff violated the provisions of 31 U.S.C. § 3730(h).

36. The Defendant has discriminated and retaliated against the Plaintiff for lawful and protected conduct in connection with his refusal to sign false federal certifications, his written objections to and efforts to stop Defendant's submission of false claims to the federal government, and his potential testimony and assistance in an action filed or to be filed under the FCA, 31 U.S.C. § 3729 et seq.

37. The Defendant knew that the Plaintiff was engaged in protected conduct as referenced herein.

38. The Defendant discharged, threatened, harassed, and otherwise discriminated against the Plaintiff during and after his employment because of his protected conduct. But for the Plaintiff's engagement in protected activity, the Defendant would not have retaliated against him.

39. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced herein, the Plaintiff has lost all the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

40. As a direct and proximate result of the violations of 31 U.S.C. § 3730(h) as referenced herein, and as a direct and proximate result of the

prohibited acts perpetrated against him, the Plaintiff is entitled to all relief necessary to make him whole.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Double back pay;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT II — VIOLATION OF FLORIDA STATUTE § 448.102: FLORIDA'S PRIVATE WHISTLEBLOWER ACT

41. Plaintiff incorporates by reference Paragraphs 1 and 3–26 of this Complaint as though fully set forth below.

42. The Plaintiff was an employee of the Defendant, a private company.

43. At all material times, the Plaintiff was to be protected from negative employment action by Florida Statute § 448.102(1)–(3), commonly known as Florida's "whistleblower statute," which in relevant part provides: "An employer may not take any retaliatory personnel action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice;

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer, and;

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

44. The Plaintiff engaged in statutorily protected activity by objecting to and refusing to participate in the Defendant's submission of materially false

federal certifications. Specifically, the Plaintiff (a) twice refused to sign FAR 52.204-10 certifications that falsely represented that Hatalom had not achieved $25 million or more in annual Federal revenue, when in fact it had; (b) communicated his objections to John Hinnant, Stacey Hinnant, and Jim Wright in writing via email and Microsoft Teams, providing detailed explanation of the applicable federal requirement and explicitly refusing to participate in the false certification; and (c) afforded the Defendant a reasonable opportunity to correct the activity by providing written guidance on compliance and offering to facilitate an alternative submission channel with SAAB, which the Defendant declined.

45. The Defendant's submission of false FAR 52.204-10 certifications to SAAB in connection with federal subcontract proposals constitutes a violation of federal law, rule, and regulation applicable to the Defendant and pertaining to its business as a defense contractor and federal subcontractor. The Plaintiff objected to this illegal activity in writing on multiple occasions and refused to participate in it.

46. After engaging in this statutorily protected activity, the Plaintiff suffered a series of adverse employment actions — including public humiliation in executive and government-facing meetings, the suppression of his core professional duties, and ultimately his termination as the sole casualty

of a purported workforce restructuring — all of which were a direct result of his protected conduct.

47. The Plaintiff's termination and his engaging in statutorily protected activity are causally related. The protected activity and the adverse employment action are not wholly unrelated: the Plaintiff was terminated approximately ten days after the second false certification was submitted and one to one and a half weeks after the Stop Work meeting in which his professional guidance was again suppressed; he was the only employee eliminated; and John Hinnant's own statement to Jim Wright — that "Patrick likes to use AI to prove me wrong" — demonstrates that Hinnant's animus toward the Plaintiff was rooted in the Plaintiff's accurate, professionally-supported contractual advice and objections.

48. The Defendant knew that the Plaintiff was engaged in protected conduct as referenced herein, as the Plaintiff communicated his objections and refusals directly to the Defendant's CEO, CGO, and COO in writing.

49. The Defendant discharged, terminated, and retaliated against the Plaintiff during and after his employment because of his protected conduct.

50. As a direct and proximate result of the violations of F.S. § 448.102 as referenced herein, the Plaintiff has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

51. As a direct and proximate result of the violations of F.S. § 448.102 as referenced herein, and as a direct and proximate result of the prohibited acts perpetrated against him, the Plaintiff is entitled to all relief necessary to make him whole.

WHEREFORE, Plaintiff demands damages against Defendant for violation of Florida's Private Sector Whistleblower's Act (Section 448.102, Fla. Stat.), including but not limited to all relief available under Section 448.103, Fla. Stat., such as:

(a) reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position,

(b) reinstatement of full fringe benefits and seniority rights,

(c) compensation for lost wages, benefits, and other remuneration,

(d) any other compensatory damages allowable at law,

(e) attorney's fees, court costs and expenses, and

(f) such other relief this Court deems just and proper.

Respectfully submitted,

Dated: October 20, 2026

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134

Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com